# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RONNIE R. MARTIN,

                    Plaintiff,

v.                                                    Case No. 24-CV-1664-JPS

OFFICER XIONG, OFFICER ALBA,
OFFICER BERES, DOE DEFENDANTS,                        **ORDER**
CITY OF MILWAUKEE, CITY OF ST.
FRANCIS, ABC INSURANCE
COMPANY 1, and ABC INSURANCE
COMPANY 2,

                    Defendants.

## 1.      INTRODUCTION

In late December 2024, Plaintiff Ronnie R. Martin ("Martin"), proceeding pro se, filed a complaint in this matter, alleging, inter alia, violations of his constitutional rights. ECF No. 1. This Order screens the complaint and finds that additional factual detail is necessary to determine the claim(s) on which Martin may be able to proceed, so the Court grants him leave to file an amended complaint. Martin also filed a motion for leave to proceed without prepaying the filing fee, ECF No. 2, which will be granted. Finally, Martin filed a subsequent motion requesting both to seal a submission to the Court and asking for appointment of counsel. ECF No. 4. That motion will be granted with respect to the request to seal and denied without prejudice with respect to the request for appointment of counsel.

**2. MOTION TO PROCEED IN FORMA PAUPERIS**

A party proceeding pro se may submit to the court a request to proceed without prepaying the otherwise required filing fees, otherwise known as a motion to proceed in forma pauperis. "The federal in forma pauperis statute, 28 U.S.C. § 1915, is designed to ensure indigent litigants have meaningful access to the federal courts while at the same time prevent indigent litigants from filing frivolous, malicious, or repetitive lawsuits." *Rodriguez v. Crim. Just. Facility Safety Bldg.*, No. 23-CV-394, 2023 WL 3467565, at *1 (E.D. Wis. Apr. 7, 2023) (citing *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)), *report and recommendation adopted sub nom. Rodriguez v. Crim. Just. Facility*, No. 23-CV-394-PP, 2023 WL 3467507 (E.D. Wis. May 15, 2023).[1]

To determine whether it may authorize a litigant to proceed in forma pauperis, the Court engages in a two-part inquiry. It must examine whether the litigant is able to pay the costs of commencing the action. 28 U.S.C. § 1915(a). The Court must also examine whether the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief"; if any of these criteria applies, the Court "shall dismiss the case." 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). Likewise, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

---

[1] Although 28 U.S.C. § 1915(a) specifically references "prisoner" litigants, it has been interpreted as providing authority for such requests by both prisoner and non-prisoner pro se litigants alike. *Floyd v. U.S. Postal Serv.*, 105 F.3d 274, 275–76 (6th Cir. 1997), *superseded by rule on other grounds as recognized by Callihan v. Schneider*, 178 F.3d 800 (6th Cir. 1999); *see also Mitchell v. Farcass*, 112 F.3d 1483, 1491 n.1 (11th Cir. 1997) ("Section 1915(e) applies to all [in forma pauperis] litigants—prisoners who pay fees on an installment basis, prisoners who pay nothing, and nonprisoners in both categories.") (Lay, J., concurring).

It follows that a litigant whose complaint does not meet the criteria in 28 U.S.C. § 1915(e)(2) or does not plead claims within the Court's subject matter jurisdiction, and whose case cannot proceed as a result, necessarily cannot reap the benefits of proceeding in forma pauperis. In other words, although in forma pauperis status ought to be granted to those impoverished litigants "who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them," *Brewster v. N. Am. Van Lines, Inc.* 461, F.2d 649, 651 (7th Cir. 1972), a pro se litigant's financial status is only part of the picture in determining whether the litigant's case may proceed without payment of the filing fee.

Martin represents under oath that he is self-employed[2] and makes about $500 per month as a writer. ECF No. 2 at 2. His expenses include $400 per month in child support, $50 in rent, and $150 in unspecified expenses. *Id.* at 1–3. He has no other assets.[3]

Although Martin has not provided an entirely complete picture of his expenses, the Court is satisfied that he is indigent. Regardless of what Martin spends the $150 in unspecified expenses on, his motion demonstrates that he does not have the funds to pay the district court filing fee—his expenses either outpace his monthly income by $100 (if the $150 is a real expense), or his monthly income barely covers his expenses (if the $150 was erroneously included). In either case, he does not appear to have

---

[2]The Court assumes that it is Martin's status as self-employed that led him to respond "No" to the question of whether he is employed. ECF No. 2 at 1.

[3]Martin provides additional financial and medical information in a subsequent filing, accompanied by a motion to seal. ECF No. 4. Given the sensitivity of the information in the filing, the Court will grant the motion to seal and direct that the filing remain under seal.

sufficient funds to pay the filing fee. For the reasons stated *infra* Section 3, the Court also finds that Martin's complaint generally clears the 28 U.S.C. § 1915(e)(2) threshold, although it has several issues that will need to be remedied in an amended complaint. Accordingly, the Court will grant Martin's motion for leave to proceed without prepayment of the filing fee, ECF No. 2.

**3.     SCREENING THE COMPLAINT**

**3.1     Legal Standard**

As noted above, when a pro se litigant seeks to proceed in forma pauperis, the Court must screen the litigant's complaint prior to service on defendants. The Court "shall dismiss the case" if it finds any of the following: the action is frivolous or malicious, the complaint fails to state a claim upon which relief may be granted, or the complaint seeks monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2); or the case is outside of the Court's subject matter jurisdiction, Fed. R. Civ. P. 12(h).

A claim is legally frivolous when it "lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke*, 490 U.S. at 325); *see also Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997) (quoting *Neitzke*, 490 U.S. at 325). The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). However, the Court "need not accept as true 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 678) (internal bracketing omitted). A court is obligated to give pro se litigants' allegations a liberal construction. *Kelsay v. Milwaukee Area Tech. Coll.*, 825 F. Supp. 215, 217 (E.D. Wis. 1993) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### 3.2    Martin's Factual Allegations[4]

On July 12, 2024, Martin got "alarming phone calls" from his mother and grandmother that Martin's uncle, Timothy Trudo ("Trudo"), had pulled a loaded handgun on them inside the family residence. ECF No. 1 at 4. Martin avers that this was not the first time Trudo had used a gun or

---

[4]Citations to the facts laid out in this section are omitted in later analysis.

Case 2:24-cv-01664-JPS    Filed 04/23/25    Page 5 of 22    Document 5

knives to threaten his family members, and that the family reported previous incidents of such armed threats to the Milwaukee Police Department ("MPD") but MPD "failed to arrest . . . Trudo or disarm him, leaving the family vulnerable to further threats." *Id.* at 4–5. He also avers that Officers Xiong and Alba (together, the "MPD Officer Defendants") knew of Trudo's prior incidents and "ongoing threats." *Id.* at 5.

Martin apparently went to where the incident was occurring and then "acted in self-defense and struck" Trudo. *Id.* at 4. The gun fell to the ground and Martin's mother retrieved it and turned it in to MPD soon after the incident. *Id.*

The following day, July 13, 2024, Officer Beres and other officers—whose identities Martin does not know and whom he names as the Doe Defendants—of the St. Francis Police Department ("SFPD") (together, "the SFPD Officer Defendants") arrested Martin. *Id.* at 5. The complaint does not state whether the MPD Officer Defendants were directly involved in the arrest, or whether or how the SFPD Officer Defendants knew the information that the MPD Officer Defendants allegedly knew about Trudo's past violent incidents.

Martin claims that the arrest and his subsequent detention were unlawful for two reasons. First, the officers involved "fail[ed] to properly investigate," "falsely label[ed] him as 'armed and dangerous' based on misleading and inaccurate information from . . . Trudo," "failed to take into account" "clear evidence of self-defense," "ignor[ed] exculpatory evidence," "misle[d] the courts and other authorities about [his] involvement [in the events of July 12, 2024], and manipulat[ed] the truth." *Id.* at 5–7. Second, he claims that "the false arrest was retaliatory in nature, as he had filed [c]ivil [r]ights claims against [SFPD] . . . two days before his

arrest" and "against . . . MPD in June of 2024." *Id.* at 5. Martin was released without criminal charges[5] after four days of detention. *Id.* at 5, 6 (noting that the "Milwaukee District Attorney reviewed the criminal case" and "declined to charge [Martin] with any wrongdoing").

Martin also claims that he was subjected to excessive force during the arrest when the arresting officers drew their guns on him even though Martin was "unarmed and innocent of any violent conduct." *Id.* at 5. He does not specify whether any physical contact was used during the arrest.

Martin also alleges that "Defendants," generally, conspired to deprive him of his constitutional rights "by knowingly providing false information, arresting him without justification, and failing to investigate the exculpatory evidence." *Id.* at 7. He names the City of Milwaukee and the City of St. Francis as defendants but does not make any allegations about these municipalities' role in the alleged events. *Id.* at 3. He also names their insurers, apparently for indemnity purposes. *Id.* at 4.

Martin alleges at various points, in a conclusory manner, that the Defendants (he does not specify which) acted "willfully, maliciously, with a deliberate indifference and/or with a reckless disregard" or "with intent to cause harm." *Id.* at 2, 6, 7.

---

[5]Earlier in the complaint, Martin states that he was released after the criminal charges against him were dropped. ECF No. 1 at 5. However, the Court—which may take judicial notice of "public court documents," *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)—was not able to locate any case on the Wisconsin Circuit Court Access Program showing charges against Martin for the July 12, 2024 incident. The Court will presume that he was not formally charged with any crime for that incident. If this is inaccurate, Martin should correct it and provide more information (such as the applicable circuit court case number) in his amended complaint.

As a result of these events, Martin says he suffered "physical and emotional distress, . . . mental anguish, [and] humiliation." *Id.* at 5. He also says that his arrest mugshot was publicly disseminated, causing him "severe reputational harm" and "loss of professional opportunities" since he is a "well-known public figure and community activist." *Id.* at 6. For relief, he seeks monetary damages. *Id.* at 8–9.

### 3.3 Analysis

Martin outlines several claims he wishes to raise. *See id.* at 6–8. Considering his list of claims and the nature of his allegations, the Court discerns the following potential claims in the complaint:

- A Fourth Amendment unlawful arrest claim;
- A First Amendment retaliatory arrest claim;
- A Fourth Amendment excessive force claim;
- A Fourth Amendment claim for wrongful detention based on fabricated evidence;
- A claim for municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1977) ("*Monell*");
- A claim of conspiracy to deprive Martin of his civil rights;
- A state law defamation claim; and
- A claim for punitive damages.

The Court analyzes each claim in turn.

### 3.3.1 Fourth Amendment Unlawful Arrest

"An unlawful arrest occurs when a person is seized by police without probable cause." *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 762 (7th Cir. 2008) (quoting *A.M. v. Butler*, 360 F.3d 787, 798 (7th Cir. 2004) and citing *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998)). A police officer

has probable cause to arrest an individual when "'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed' an offense." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (quoting *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998)). The analysis is objective: "[t]he court evaluates probable cause not on the facts as an omniscient observer would perceive them, but rather as they would have appeared to a reasonable person in the position of the arresting officer." *Id.* (internal quotation marks and citations omitted).

Martin alleges that the officers who arrested him did so based on false, inaccurate, or incomplete information—he is alleging, at bottom, that he was arrested on July 13, 2024 without probable cause and therefore unlawfully. But the complaint lacks sufficient detail for the Court to determine whether Martin can pursue a Fourth Amendment unlawful arrest claim. First, it is not clear which officers were present on each date Martin references in his complaint. Did the MPD Officer Defendants respond on July 12, 2024 when Trudo threatened Martin's family? Were the SFPD Officer Defendants present on July 12? Did only the SFPD Officers Defendants execute Martin's arrest on July 13, 2024 or were the MPD Officer Defendants involved on that day as well? Second, did the arresting officers tell Martin why he was being arrested, and if so, what was the stated reason?

Third, and most importantly, what information did each of the arresting officers have at the time of the arrest? What (to Martin's knowledge) did they each know about what had occurred in Martin's family's home on July 12? Martin has alleged that the MPD Officer

Defendants knew about Trudo's previous threats to Martin's family, but how did the SFPD Officer Defendants know or find out that information? What allegedly false or misleading information did Trudo provide and to which officers? What exactly was the "clear evidence of self-defense" or "exculpatory evidence" that Martin alludes to, and which officers knew about it?

Without this level of detail, it is not possible at this time for the Court to determine whether Martin can proceed on an unlawful arrest claim against any of the MPD or SFPD Officer Defendants. He will have an opportunity to amend his complaint to add greater factual detail related to this claim.

### 3.3.2   First Amendment Retaliatory Arrest

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out . . . ." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citing *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998) and *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). "To prevail on a First Amendment retaliation claim, a plaintiff must establish three elements": (1) that "he engaged in protected First Amendment activity," (2) that "an adverse action was taken against him," and (3) that "his protected conduct was at least a motivating factor of the adverse action." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).[6]

---

[6]Additionally, "[t]he plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). Martin's allegations with respect to his Fourth Amendment unlawful arrest claim will therefore be relevant to any First Amendment claim he may pursue.

Martin has alleged that he filed a civil rights complaint against SFPD two days before his arrest by the SFPD Officer Defendants on July 13. These facts could support an inference that his civil rights complaints against SFPD were a motivating factor in the arrest. Martin has therefore alleged enough to proceed on a First Amendment retaliatory arrest claim against the SFPD Officer Defendants. Since Martin will have an opportunity to amend his complaint, any amended complaint **must reproduce** any allegations against the SFPD Officer Defendants related to this claim if he wishes to continue pursuing it.

Similarly, Martin has alleged that he filed a civil rights complaint against MPD in June 2024. However, as mentioned in the previous section, it is not clear that the MPD Officer Defendants were involved in executing Martin's arrest on July 13. Without this information, it is not clear what adverse and allegedly retaliatory action the MPD Officer Defendants took against Martin, and the Court cannot determine whether a First Amendment retaliatory arrest claim may proceed against the MPD Officer Defendants. As already noted, Martin will have an opportunity to amend his complaint. If Martin wishes to raise this First Amendment retaliatory arrest claim against the MPD Officer Defendants, he must add allegations clarifying whether the MPD Officer Defendants were involved in executing Martin's arrest on July 13.

### 3.3.3  Fourth Amendment Excessive Force

"[T]he Fourth Amendment prohibits the use of excessive force during the execution of a seizure . . . ." *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "To establish a claim of excessive force under the Fourth Amendment, [a] plaintiff[] must show 1) there was a seizure, and 2) the seizure was

objectively unreasonable." *Boone v. City of Milwaukee*, No. 08-C-0167, 2011 WL 4472845, at *2 (E.D. Wis. Sept. 26, 2011) (citing *Campbell v. White*, 916 F.2d 421, 423 (7th Cir. 1990)).

Martin has alleged that the officers who arrested him drew their guns on him. Even though the complaint does not say that the arresting officers had any physical contact with Martin, this is not a reason to dismiss the claim at this stage. *See Chelios v. Heavener*, 520 F.3d 678, 690 (7th Cir. 2008) ("Although injury is a relevant factor in determining whether an officer used excessive force, an excessive force claim does not require any particular degree of injury." (collecting cases)). But the complaint does not state which officers arrested Martin and therefore it is unclear against whom he intends to bring this claim. Martin will therefore have an opportunity to amend his complaint to specify which officers were involved in his arrest and allegedly used excessive force in arresting him, which he must do if he intends to proceed with this claim.[7]

---

[7]Martin also raises a claim that his arrest "violated the Eighth Amendment's prohibition against cruel and unusual punishment." ECF No. 1 at 7. Such a claim is not relevant in this case. *White v. Claudio*, No. 25-CV-0302-BHL, 2025 WL 815597, at *2 (E.D. Wis. Mar. 13, 2025) ("The Eighth Amendment prohibits cruel and unusual punishment after a person is convicted of a crime; it does not apply to an arresting officer's actions." (citing *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009)). In any event, the Court believes that a Fourth Amendment excessive force claim is the most fitting legal basis for Martin's allegations and that a "cruel and unusual" claim would simply be duplicative of this claim. "Proceeding on different constitutional theories based on the same facts is redundant." *Huff v. Lott*, No. 3:21-CV-503-RLM-MGG, 2023 WL 2691602, at *2 (N.D. Ind. Mar. 29, 2023) (citing *Hambright v. Kemper*, 705 F. App'x 461, 462 (7th Cir. 2017), *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005), and *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see also Conyers*, 416 F.3d at 586 (dismissing additional claims based on same facts because the claim "gains nothing by attracting additional constitutional labels") (citing *Graham*, 490 U.S. at 395).

### 3.3.4 Fourth Amendment Wrongful Detention Claim Based on Fabricated Evidence

Martin alleges that the officers who investigated the July 12, 2024 events and who arrested him the following day did so based on false, inaccurate, or incomplete information. He asserts this as a claim of "deceit[] and [w]itness [t]ampering" under state law. As noted *infra* Section 3.3.6.1, Wisconsin law does not appear to recognize such a claim. However, in the interest of construing his pleading liberally, *Haines*, 404 U.S. at 520–21, the Court will examine whether such a claim may be cognizable under federal law.

"Allegations of wrongful arrest and detention [based on fabricated evidence] . . . are actionable under the Fourth Amendment . . . ." *DeLaRosa v. Village of Romeoville*, No. 23 CV 7049, 2024 WL 1579394, at *3 (N.D. Ill. Apr. 11, 2024) (citing *Manuel v. City of Joliet*, 580 U.S. 357, 365 (2017)). Martin is alleging that he was arrested and then detained for several days based on false, inaccurate, or incomplete information. The law supports this theory in some instances. *See id.* (examining Fourth Amendment unlawful detention claim based on assertions that "the defendants fabricated the police reports, an affidavit submitted to obtain a search warrant, and the grand jury testimony, resulting in his unlawful [pretrial] detention . . . .").[8] However, there is not enough information in Martin's complaint for the Court to determine whether Martin may proceed on this theory at this time.

---

[8] Malicious prosecution is another Fourth Amendment claim that often accompanies a Fourth Amendment wrongful detention claim. *See, eg. DeLaRosa*, 2024 WL 1579394, at *3. Although Fourth Amendment malicious prosecution claims are recognized under the Fourth Amendment, *see Thompson v. Clark*, 596 U.S. 36, 42 (2022), it does not appear that Martin was prosecuted. Rather, he was detained and then released without charges. *See supra* note 5 and accompanying text. Accordingly, this theory appears to be inapplicable in this case.

Martin has alleged that Trudo provided false or misleading information to the officers responsible for the arrest which led the officers to mislabel Martin as "armed and dangerous." However, Martin does not detail what exactly Trudo said, what was false or inaccurate about Trudo's statements, or otherwise what false, inaccurate, or incomplete information the arresting officers had, believed, or said about Martin. As with Martin's Fourth Amendment unlawful arrest claim, it is also not clear against which Defendants this claim may proceed; to determine this Martin must allege which Defendant(s) arrested Martin based on false information. Martin's amended complaint should clarify these matters.

### 3.3.5   Municipal Liability

Martin names the City of Milwaukee and the City of St. Francis as Defendants (the "Municipal Defendants"). In the interest of construing his pleading liberally, *Haines*, 404 U.S. at 520–21, the Court will presume that he is attempting to raise a *Monell* municipal liability claim against the Municipal Defendants. A *Monell* claim requires Martin to plead that the MPD Officer Defendants and the SFPD Officer Defendants violated his constitutional rights because of or pursuant to an official policy or custom of the respective Municipal Defendants. *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020) (plaintiff must plead "an action pursuant to a municipal policy" (citing *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404–07 (1997))). Martin has not identified any City of Milwaukee or City of St. Francis policy or custom that allegedly permitted or caused the MPD Officer Defendants and the SFPD Officer Defendants to violate his constitutional rights. Nor has he alleged the other two elements of a *Monell* claim: that City of Milwaukee and City of St. Francis "policymakers were deliberately indifferent to a known risk that [any such] policy would lead

to constitutional violations" and that "the municipal action was the moving force behind the constitutional injury." *Id.* (citation and internal quotation marks omitted). As it stands, the complaint fails to state a *Monell* claim against the Municipal Defendants.

Because Martin sues the Municipal Defendants but provides no factual basis that would sustain a *Monell* claim against them, the Court will give him a chance to amend his complaint to plead factual allegations that would support such a claim. Martin should note that he must allege concrete facts—not speculation or conspiracy theories—that plausibly support a claim that his constitutional rights were violated because of official City of Milwaukee and/or City of St. Francis policy or custom approved by its policymakers.

### 3.3.6    Civil Rights Conspiracy

Martin alleges that "Defendants," generally, conspired to deprive him of his constitutional rights "by knowingly providing false information, arresting him without justification, and failing to investigate the exculpatory evidence." He cites 18 U.S.C. § 242 for this claim. *Id.* at 6. This statute provides for criminal prosecution of civil rights violations and is enforced by the United States Department of Justice, not by private individuals. *See* 18 U.S.C. § 242; *Statutes Enforced by the Criminal Section*, U.S. DEP'T OF JUST., https://www.justice.gov/crt/statutes-enforced-criminal-section (last visited Apr. 23, 2025). Private individuals may, however, bring civil rights conspiracy claims under 42 U.S.C. § 1985(3).

To plead a violation of § 1985(3), a plaintiff must allege "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation

of a right or privilege granted to U.S. citizens." *Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir. 2000) (quoting *Majeske v. Fraternal Order of Police, Loc. Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996)). A civil rights conspiracy claim must include an allegation of "some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002) (citing *Majeske*, 94 F.3d at 311). The statute's coverage also extends to "conspiracies to discriminate against persons based on sex, religion, ethnicity or political loyalty." *Volk v. Coler*, 845 F.2d 1422, 1434 (7th Cir. 1988) (collecting cases).

Martin's complaint fails to plead any facts that tend to show that the officers involved in his arrest and detention were acting with discriminatory animus based on Martin's race, sex, religion, ethnicity, political loyalty, or other class status. As already discussed, his complaint also fails to make clear how the MPD Officer Defendants and the SFPD Officer Defendants were interacting or communicating with each other about the events of July 12 and 13, 2024—so the allegations also do not permit an inference that a conspiracy to deprive Martin of his civil rights existed among these Defendants. Martin may amend his complaint to raise allegations showing (1) that a conspiracy existed among the MPD Officer Defendants and/or the SFPD Officer Defendants and (2) that the conspiracy was based on class-based discriminatory animus. Again, Martin must allege concrete facts—not speculation or conspiracy theories—that plausibly support a civil conspiracy claim.

To the extent Martin is attempting to raise this claim against the Municipal Defendants, there are no allegations in the complaint that would support such a claim. "Actions under § 1985 are not available [against municipal entities] on the basis of *respondeat superior*"—merely having

employed a wrongdoer—"in the absence of allegations that an official custom, policy or practice has caused the deprivation." *Hernandez v. Partners Warehouse Supplier Servs., LLC*, 890 F. Supp. 2d 951, 959 (N.D. Ill. 2012) (citing *Collier v. Rodriguez*, No. 96–23, 1996 WL 535326, at *3, (N.D. Ill. Sept. 18, 1996)). Martin may amend his complaint to raise allegations showing that the officers involved in his arrest conspired to violate his civil rights because of official City of Milwaukee and/or City of St. Francis policy or custom. If he does so, these will likely be the same or similar allegations as those that would support a *Monell* claim. If Martin does not provide factual allegations supporting either a *Monell* or a civil rights conspiracy claim against the Municipal Defendants, they will be dismissed without prejudice from this action.

### 3.3.7    State Law Claims

#### 3.3.7.1 Deceit and Witness Tampering

Martin attempts to raise a claim of "deceit[] and [w]itness [t]ampering" by alleging that the MPD Officer Defendants and the SFPD Officer Defendants arrested and detained him based on false, inaccurate, or incomplete information. He asserts that this is a state law claim. *Id.*

The Court is not aware of a "deceit" or "witness tampering" cause of action under Wisconsin tort law. If Martin is attempting to raise a malicious prosecution claim under state law, that claim also fails because he was released without charges and no prosecution occurred in this case. *See Wis. Pub. Serv. Corp. v. Andrews*, 766 N.W.2d 232, ¶ 23 (Wis. Ct. App. 2009) (requiring as an element of a malicious prosecution claim that "there [was] a[n] . . . institution or continuation of some regular judicial proceedings against the plaintiff" (citing *Krieg v. Dayton-Hudson Corp.*, 311 N.W.2d 641,

643 (Wis. 1981))). Martin will not be permitted to proceed on this claim and it will be dismissed with prejudice.

### 3.3.7.2 State Law Defamation

"The elements of a common law action for defamation are: (1) a false statement; (2) communicated by speech, conduct or in writing to a person other than the one defamed; and (3) the communication is unprivileged and tends to harm one's reputation, lowering him or her in the estimation of the community or deterring third persons from associating or dealing with him or her." *Laughland v. Beckett*, 870 N.W.2d 466, ¶ 22 (Wis. Ct. App. 2015) (quoting *Ladd v. Uecker*, 780 N.W.2d 216, ¶ 8 (Wis. Ct. App. 2010)).

Martin seems to argue that the public dissemination of his mugshot after his allegedly unlawful arrest and detention was defamatory. Because the Court's supplemental jurisdiction over this state law claim depends on its original jurisdiction over Martin's federal claims, the Court will wait to assess the viability of this claim until it can review any amended complaint. *See* 28 U.S.C. § 1367(a) and (c).

### 3.3.8 Punitive Damages

Martin seeks punitive damages. Punitive damages are available for federal civil rights claims upon showing of "evil motive or intent, or . . . reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). As to the state law defamation claim, "Wisconsin recognizes 'express malice' as a basis for punitive damages in a private defamation action"; express malice entails "ill will, envy, spite, [or] revenge." *Laughland*, 870 N.W.3d at ¶ 38 (quoting *Calero v. Del Chem. Corp.*, 228 N.W.2d 737, 743 (Wis. 1975)).

The complaint does not allege facts that would tend to show the level of intent necessary for Martin to recover punitive damages on his federal or

state law claims. Martin alleges at various points, in a conclusory manner, that the Defendants (he does not specify which) acted "willfully, maliciously, with a deliberate indifference and/or with a reckless disregard" or "with intent to cause harm." But the complaint does not detail which Defendants allegedly displayed these behaviors towards Martin or what actual behaviors he observed that led him to believe these Defendants were acting willfully, maliciously, with intent to harm, or with deliberate indifference or reckless disregard. Martin may attempt to include such allegations in his amended complaint.

### 4. MOTION FOR APPOINTMENT OF COUNSEL

Martin additionally requests that he be appointed an attorney to represent him. ECF No. 4 at 2. As a civil litigant, Martin has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018) (citing *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007) (en banc)). However, under 28 U.S.C. § 1915(e)(1), a "court may request an attorney to represent any person unable to afford counsel." A court should seek counsel to represent a plaintiff if: (1) he has made a reasonable attempt to secure counsel; and (2) "the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt*, 503 F.3d at 655). Whether to appoint counsel in a particular case is left to a court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018) (citing *Pruitt*, 503 F.3d at 654).

Martin has not demonstrated that he has made a reasonable attempt to secure counsel on his own, so the Court will deny his motion without prejudice. If Martin raises the motion again, he must demonstrate his

reasonable attempt(s) to secure counsel and explain why the difficulty of the case exceeds his capacity as a layperson to litigate it.

**5.    CONCLUSION**

For the reasons stated above, the Court will grant Martin's motion for leave to proceed without prepayment of the filing fee and will grant him leave to amend his complaint to provide the additional factual details described above. His motion, ECF No. 4, will be granted insofar as it seeks to seal that submission and denied without prejudice insofar as it seeks appointment of counsel.

Any amended complaint must be filed on or before **May 23, 2025**. The Court is enclosing a copy of its amended complaint form and instructions.

Martin's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the Court and any defendants with notice of what the defendants allegedly did or did not do to violate his rights.

Martin is advised that the amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." The amended complaint supersedes the prior complaint and must be complete in itself without reference to the original complaint, which is effectively withdrawn. *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998) (citing *Wellness Cmty.-Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995) and *Barnett v. Daley*, 32 F.3d 1196, 1198 (7th Cir. 1994)). In such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* (quoting *Fuhrer v. Fuhrer*, 292 F.2d 140, 144 (7th Cir. 1961)). In other words, any amended complaint must include all of the allegations and claims

(including those from the original complaint, except for those allegations related to the state law deceit and witness tampering claim, on which Martin has not been permitted to proceed, *see supra* Section 3.3.7.1) that Martin wishes to make, in a single filing without reference to other documents. Martin should use the provided amended complaint form, and may use up to five (5) additional sheets of paper to list his allegations if needed.

If an amended complaint is received, it will become the operative complaint in this action, and the Court will screen it in accordance with 28 U.S.C. § 1915. If Martin does not file an amended complaint by this deadline, the Court will dismiss the case without prejudice. *See* Civ. L.R. 41(c).

Accordingly,

**IT IS ORDERED** that Plaintiff Ronnie Martin's motion for leave to proceed without prepayment of the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff Ronnie Martin's motion, ECF No. 4, be and the same is hereby **GRANTED** insofar as it seeks to seal that submission; the filing at ECF No. 4 shall remain under seal until further order of the Court;

**IT IS FURTHER ORDERED** that Plaintiff Ronnie Martin's motion, ECF No. 4, be and the same is hereby **DENIED without prejudice** insofar as it seeks appointment of counsel;

**IT IS FURTHER ORDERED** that on or before **May 23, 2025**, Plaintiff shall submit an amended complaint using the provided form and in accordance with the instructions provided herein;

**IT IS FURTHER ORDERED** that Plaintiff Ronnie Martin's purported state law claim for deceit and witness tampering, *see infra* Section 3.3.7.1, be and the same is hereby **DISMISSED with prejudice**; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a blank non-prisoner amended complaint form along with this Order.

Dated at Milwaukee, Wisconsin, this 23rd day of April, 2025.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

---

Plaintiff will be required to submit all correspondence and legal material to:

        Office of the Clerk
        United States District Court
        Eastern District of Wisconsin
        362 United States Courthouse
        517 E. Wisconsin Avenue
        Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.