# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RONNIE R. MARTIN,

          Plaintiff,

v.

OFFICER XIONG, OFFICER ALBA,
OFFICER BERES, DOE DEFENDANTS,
CITY OF MILWAUKEE, CITY OF ST.
FRANCIS, ABC INSURANCE
COMPANY 1, and ABC INSURANCE
COMPANY 2,

          Defendants.

Case No. 24-CV-1664-JPS

**ORDER**

## 1. INTRODUCTION

In late December 2024, Plaintiff Ronnie R. Martin ("Martin"), proceeding pro se, filed a complaint in this matter alleging, inter alia, violations of his constitutional rights. ECF No. 1. The Court granted Martin's motion for leave to proceed without prepaying the filing fee, and after screening the complaint "f[ou]nd that additional factual detail [wa]s necessary to determine the claim(s) on which Martin may be able to proceed." ECF No. 5 at 1. The Court accordingly "grant[ed] him leave to file an amended complaint." *Id.* Martin has since filed an amended complaint, ECF No. 11, which the Court screens herein.

## 2. SCREENING STANDARD

When a pro se litigant seeks to proceed in forma pauperis, the Court must screen the litigant's complaint prior to service on defendants. The Court "shall dismiss the case" if it finds any of the following: the action is

frivolous or malicious, the complaint fails to state a claim upon which relief may be granted, or the complaint seeks monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2); or the case is outside of the Court's subject matter jurisdiction, Fed. R. Civ. P. 12(h).

A claim is legally frivolous when it "lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)); *see also Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997) (quoting *Neitzke*, 490 U.S. at 325). The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). However, the Court "need not accept as true 'legal conclusions, or threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 678) (internal bracketing omitted). A court is obligated to give pro se litigants' allegations a liberal construction. *Kelsay v. Milwaukee Area Tech. Coll.*, 825 F. Supp. 215, 217 (E.D. Wis. 1993) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## 3.    FACTUAL ALLEGATIONS[1]

On July 12, 2024, Martin received "alarming phone calls" from his mother and grandmother that Martin's uncle, Timothy Trudo ("Trudo"), had pulled a loaded handgun on them inside the family residence. ECF No. 11 at 4. Martin avers that "[t]his was not the first time" that Trudo had brandished a gun or knives to threaten his family members. *Id.* The family reported previous incidents of such armed threats to the Milwaukee Police Department ("MPD"), but MPD "failed to arrest . . . Trudo or disarm him, leaving the family vulnerable to further threats." *Id.* He also avers that Officers Xiong and Alba (together, the "MPD Officer Defendants") knew of Trudo's prior incidents and "ongoing threats." *Id.* at 5.

Martin apparently went to where the incident was occurring and, when Trudo aimed the gun at Martin, Martin "acted in self-defense and

---

[1]Citations to the facts laid out in this section are omitted from later analysis.

In addition to his amended complaint, Martin filed a "notice" that "a communication has been sent to President Ibrahim Traoré of Burkina Faso, accompanied by a petition submitted to the World Court," which "places [this] case[] under international scrutiny." ECF No. 10 at 1. Because this material is addressed to a different tribunal, the Court has not considered it in assessing Martin's amended complaint.

struck [Trudo]." *Id.* at 4. The gun fell to the ground, and Martin's mother retrieved it and turned it in to MPD soon after the incident. *Id.* Martin states that his mother and grandmother witnessed the incident and "confirmed" to MPD officers (he does not give their names) "that . . . Trudo was the aggressor and had approached [Martin] with a firearm, attempting to strike him." *Id.* at 6.

The following day, July 13, 2024, Officer Beres and other officers— whose identities Martin does not know and whom he names as the Doe Defendants—of the St. Francis Police Department ("SFPD") (together, "the SFPD Officer Defendants") arrested Martin. *Id.* at 5. The amended complaint suggests that the MPD Officer Defendants obtained a warrant for Martin's arrest from a state court. *See id.* at 6 ("Prior to obtaining the arrest warrant, . . . []MPD[] officers were notified . . . ."); *id.* at 8 (referencing "MPD's presentation of misinformation to the court").[2]

Martin was released without criminal charges[3] after four days of detention. *Id.* at 5, 6 (noting that the "Milwaukee District Attorney reviewed the criminal case" and "declined to charge [Martin] with any wrongdoing").

---

[2]The amended complaint does not state whether the MPD Officer Defendants were directly involved in the arrest, or whether or how the SFPD Officer Defendants knew the information that the MPD Officer Defendants allegedly knew about Trudo's past violent incidents.

[3]Earlier in the complaint, Martin states that he was released after the criminal charges against him "were dropped." ECF No. 1 at 5. However, the Court—which may take judicial notice of "public court documents," *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)—was not able to locate any case on the Wisconsin Circuit Court Access Program showing charges against Martin for the July 12, 2024 incident. The Court will presume that he was not formally charged with any crime for that incident.

Martin claims that the arrest and his subsequent detention were unlawful for two reasons. First, the officers involved in his arrest "fail[ed] to properly investigate," "falsely label[ed] him as 'armed and dangerous' based on misleading and inaccurate information from . . . Trudo," "failed to take into account" "clear evidence of self-defense" and "exculpatory evidence from independent witnesses," "misle[d] the courts and other authorities about [his] involvement [in the events of July 12, 2024], and manipulat[ed] the truth to secure his false arrest." *Id.* at 5–7, 10; *id.* at 8 (accusing Officer Beres of "falsifying key aspects of the police report" and "Defendants" of "fabricat[ing] the police report, affidavit for search warrant, and subsequent grand jury testimony"). In simpler terms, he believes that he was arrested without probable cause. *Id.* at 8. He states that MPD "supported and ratified this behavior by failing to properly train, supervise, or discipline its officers." *Id.*

Second, he claims that "the false arrest was retaliatory in nature, as he had filed [c]ivil [r]ights claims against [SFPD] . . . two days before his arrest" and "against . . . MPD in June of 2024." *Id.* at 5; *id.* at 8 (alleging that Martin was "engaged in protected activity" which was a "motivating factor for the arrest"). He also argues that his arrest was impermissibly motivated by his race—he is black, and Trudo, who is white, was not arrested. *Id.* at 9.

Martin also claims that he was subjected to excessive force during the arrest when the arresting officers drew their guns on him even though Martin was "unarmed and innocent of any violent conduct." *Id.* at 5. He was "physically handled by officers who forcibly restrained him [and] placed him in handcuffs," exacerbating his post-traumatic stress disorder "due to prior incidents of police brutality." *Id.* at 7.

Martin also alleges that "Defendants," generally, conspired to deprive him of his constitutional rights through the above-described unlawful and retaliatory arrest. *Id.* at 9. He alleges that the City of Milwaukee's "policies, customs, or failures to train and supervise," including its "policy or custom of disregarding exculpatory evidence, encouraging reliance on unreliable informants, and retaliating against individuals with a history of complaints or lawsuits against [MPD]," allowed the asserted constitutional violations to occur.[4] *Id.* He also names the City of Milwaukee and the City of St. Francis's (together, the "Municipal Defendants") insurers as defendants, apparently for indemnity purposes. *Id.* at 4.

Martin alleges at various points, in a conclusory manner, that Defendants (he does not specify which) acted "willfully, maliciously, with a deliberate indifference and/or with a reckless disregard," "with the intent to cause harm," or similar. *Id.* at 2, 11; *id.* at 9–12.

As a result of these events, Martin says he suffered "significant physical and emotional distress, . . . mental anguish, [and] humiliation." *Id.* at 5. He also says that his arrest mugshot was publicly disseminated, causing him "severe reputational harm" and "loss of professional opportunities" since he is a "well-known public figure and community activist." *Id.* at 6. For relief, he seeks compensatory and punitive damages, injunctive relief, and other equitable relief. *Id.* at 12.

---

[4]Martin also names the City of St. Francis as a defendant but does not make any such allegations against it.

## 4. ANALYSIS

Martin outlines several claims he wishes to raise. *See id.* at 10–11. Considering his list of claims and the nature of his allegations, the Court discerns the following potential claims in the amended complaint:

- A Fourth Amendment unlawful arrest claim;

- A First Amendment retaliatory arrest claim;

- A Fourteenth Amendment discriminatory arrest claim;

- A Fourth Amendment excessive force claim;

- A Fourth Amendment claim for wrongful detention based on fabricated evidence;

- A claim for municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1977) ("*Monell*");

- A claim of conspiracy to deprive Martin of his civil rights; and

- State law claims for deceit and witness tampering and defamation.

The Court analyzes each claim in turn.

### 4.1 Fourth Amendment Unlawful Arrest

"An unlawful arrest occurs when a person is seized by police without probable cause." *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 762 (7th Cir. 2008) (quoting *A.M. v. Butler*, 360 F.3d 787, 798 (7th Cir. 2004) and citing *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998)). A police officer has probable cause to arrest an individual when "'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed' an offense." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (quoting *Kelley v. Myler*, 149 F.3d

641, 646 (7th Cir. 1998)). The analysis is objective: "[t]he court evaluates probable cause not on the facts as an omniscient observer would perceive them, but rather as they would have appeared to a reasonable person in the position of the arresting officer." *Id.* (internal quotation marks and citations omitted).

Martin alleges that the officers who arrested him did so based on false, inaccurate, or incomplete information—specifically, that a warrant for his arrest was based on false or misleading information and that the arresting officers had at the time of his arrest, or could have gotten, exculpatory evidence or evidence that would have shown that Martin was acting in self-defense. The nature of the false or misleading information that led to issuance of the warrant and the nature of the exculpatory/self-defense evidence is not entirely clear. But if Martin's allegations are true, and the officers who arrested him indeed included false or misleading information when seeking an arrest warrant or knew of information at the time of the arrest that would have undermined a finding of probable cause, then the Court or a jury may be able to conclude that Martin was arrested without probable cause. Therefore, these allegations are sufficient at this stage to support a Fourth Amendment unlawful arrest claim.[5]

The Court previously found that it was not clear to what extent each of the MPD and SFPD Officer Defendants was personally involved in his

---

[5]Martin cannot merely argue that police *should have* investigated further before arresting him; rather, he will ultimately need to show that the arresting officers had, *at the time of his arrest*, sufficient exculpatory information that would have outweighed a finding of probable cause. *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998) ("[I]f an officer has established cause on every element of a crime, he need not continue investigating in order to test the suspect's claim of innocence." (citing *Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 437–442 (7th Cir. 1986))).

arrest and what each officer knew and/or did to participate in the arrest. ECF No. 5 at 9; *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) ("[Section] 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim." (citing *Zentmeyer v. Kendall County*, 220 F.3d 805, 811 (7th Cir. 2000); *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000); and *Davis v. Zirkelbach*, 149 F.3d 614, 619 (7th Cir. 1998))). For the time being, the Court will permit Martin's Fourth Amendment unlawful arrest claim to proceed against all of the MPD and SFPD Officer Defendants (Xiong, Alba, Beres, and the Doe Defendants), noting that the precise involvement of each officer and the identities of the Doe Defendants will need to be developed in the fact-finding portion of the case. If Martin cannot establish that certain MPD or SFPD Officer Defendants were personally involved in his arrest, this claim will be subject to dismissal as to those Defendant(s).

### 4.2 First Amendment Retaliatory Arrest

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out . . . ." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citing *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998) and *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). "To prevail on a First Amendment retaliation claim, a plaintiff must establish three elements": (1) that "he engaged in protected First Amendment activity," (2) that "an adverse action was taken against him," and (3) that "his protected conduct was at least a motivating factor of the adverse action." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

Martin alleges that, before his arrest on July 13, 2024, he had filed civil rights complaints against SFPD and MPD. Assuming that each of the arresting officers knew of his civil rights complaints, these facts could support an inference that his complaints against SFPD and/or MPD were a motivating factor in his arrest. Martin has therefore alleged enough to proceed on a First Amendment retaliatory arrest claim against the MPD and SFPD Officer Defendants.[6] As already noted, if Martin cannot establish that certain MPD or SFPD Officer Defendants were personally involved in his arrest, this claim will be subject to dismissal as to those Defendant(s).

### 4.3 Fourteenth Amendment Discriminatory Arrest

A plaintiff's claim that he was targeted for arrest on the basis of his race—functionally, a claim that he was denied the Fourteenth Amendment's guarantee of equal protection—requires him to "demonstrate intentional or purposeful discrimination" on the part of the arresting officers. *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982) (quoting *Bloomenthal v. Lavelle*, 614 F.2d 1139, 1141 (7th Cir. 1980) (per curiam)). Showing that the officers acted with a discriminatory purpose "implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Id.* (citing *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

Martin alleges that, because he is black and was arrested whereas Trudo is white and was not arrested, his arrest was discriminatory. He has

---

[6]"The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). If Defendants can show that probable cause existed for Martin's arrest to defeat his Fourth Amendment unlawful arrest claim, his First Amendment retaliatory arrest claim will also fail on that basis.

also alleged throughout his complaint that the arresting officers acted intentionally and willfully. At the pleading stage and given the Court's responsibility to liberally construe pro se filings, *Erickson*, 551 U.S. at 94 (citation omitted), the Court will permit this claim to proceed against the MPD and SFPD Officer Defendants. As already noted, if Martin cannot establish that certain MPD or SFPD Officer Defendants were personally involved in his arrest, this claim will be subject to dismissal as to those Defendant(s).

### 4.4 Fourth Amendment Excessive Force

"[T]he Fourth Amendment prohibits the use of excessive force during the execution of a seizure . . . ." *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "To establish a claim of excessive force under the Fourth Amendment, [a] plaintiff[] must show 1) there was a seizure, and 2) the seizure was objectively unreasonable." *Boone v. City of Milwaukee*, No. 08-C-0167, 2011 WL 4472845, at *2 (E.D. Wis. Sept. 26, 2011) (citing *Campbell v. White,* 916 F.2d 421, 423 (7th Cir. 1990)).

Martin alleges that the officers who arrested him drew their guns on him and physically handled and restrained him in a way that caused him emotional, mental, and/or physical harm. This is sufficient to state a Fourth Amendment excessive force claim. *See Baird v. Renbarger,* 576 F.3d 340, 345 (7th Cir. 2009) ("[G]un pointing when an individual presents no danger is unreasonable and violates the Fourth Amendment." (citing *Jacobs*, 215 F.3d at 773–74; *McDonald v. Haskins*, 966 F.2d 292, 294–95 (7th Cir. 1992); and *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996))). As already noted, if Martin cannot establish that certain MPD or SFPD Officer Defendants were

personally involved in his arrest, this claim will be subject to dismissal as to those Defendant(s).[7]

### 4.5 Fourth Amendment Wrongful Detention Claim Based on Fabricated Evidence

Martin alleges that the officers who investigated the July 12, 2024 events and who arrested him the following day did so based on false, inaccurate, or incomplete information. He asserts this as a claim of "deceit[] and [w]itness [t]ampering" under state law. ECF No. 11 at 10–11. As the Court already explained, ECF No. 5 at 17–18, Wisconsin law does not appear to recognize such a claim. However, in the interest of construing his pleading liberally, *Haines*, 404 U.S. at 520–21, the Court will examine whether Martin may proceed on such a claim under federal law.

"Allegations of wrongful arrest and detention [based on fabricated evidence] . . . are actionable under the Fourth Amendment . . . ." *DeLaRosa v. Village of Romeoville*, No. 23 CV 7049, 2024 WL 1579394, at *3 (N.D. Ill. Apr. 11, 2024) (citing *Manuel v. City of Joliet*, 580 U.S. 357, 365 (2017)). Martin alleges that he was arrested and then detained for several days based on false, inaccurate, or incomplete information. The law supports this theory in some instances. *See id.* (examining Fourth Amendment unlawful detention claim based on assertions that "the defendants fabricated the police reports, an affidavit submitted to obtain a search warrant, and the grand jury testimony, resulting in his unlawful [pretrial] detention . . . ").[8]

---

[7]Martin again raises a claim that his arrest "violated the Eighth Amendment's prohibition against cruel and unusual punishment." ECF No. 1 at 11. For reasons already explained in the Court's prior screening order, "[s]uch a claim is not relevant in this case." ECF No. 5 at 12 n.7 (citations omitted).

[8]Malicious prosecution is another Fourth Amendment claim that often accompanies a Fourth Amendment wrongful detention claim. *See, eg. DeLaRosa*,

Martin alleges that Trudo provided false or misleading information to the officers responsible for the arrest which led the officers to mislabel Martin as "armed and dangerous." This allegation, while bare, is sufficient to permit him to proceed on a Fourth Amendment wrongful detention claim based on fabricated evidence. As already noted, if Martin cannot establish that certain MPD or SFPD Officer Defendants were personally involved in his arrest, this claim will be subject to dismissal as to those Defendant(s).

### 4.6    Municipal Liability

Martin names the Municipal Defendants, explicitly references *Monell*, and states that MPD caused his allegedly unlawful arrest by failing to properly train, supervise, or discipline its officers and that the City of Milwaukee had a policy or custom that permitted unlawful arrests to occur. Although Martin raises these allegations only against the City of Milwaukee/MPD, *supra* note 4, in the interest of construing his pleading liberally, *Haines*, 404 U.S. at 520–21, the Court will presume that he intends to proceed on this claim against both of the Municipal Defendants.

A *Monell* claim requires Martin to plead that the MPD Officer Defendants and the SFPD Officer Defendants violated his constitutional rights because of or pursuant to an official policy or custom of the respective Municipal Defendants. *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020) (plaintiff must plead "an action pursuant to a municipal policy" (citing *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404–07 (1997))).

---

2024 WL 1579394, at *3. Although Fourth Amendment malicious prosecution claims are recognized under the Fourth Amendment, *see Thompson v. Clark*, 596 U.S. 36, 42 (2022), it does not appear that Martin was prosecuted. Rather, he was detained and then released without charges. *See* supra note 3 and accompanying text. Accordingly, this theory appears to be inapplicable in this case.

Martin alleges in a conclusory manner that the Municipal Defendants failed to properly train, supervise, or discipline their officers and/or had a policy or custom that permitted the MPD and SFPD Officer Defendants to violate his constitutional rights. He also alleges in a conclusory manner that the Municipal Defendants' "policymakers were deliberately indifferent to a known risk that [any such] policy would lead to constitutional violations" and that "the municipal action was the moving force behind the constitutional injury." *Id.* (citation and internal quotation marks omitted). At this time, the Court will accept these conclusory allegations and permit Martin to proceed on a *Monell* claim against the Municipal Defendants.[9]

### 4.7 Civil Rights Conspiracy

Martin alleges that Defendants, generally, conspired to deprive him of his constitutional rights. He cites 18 U.S.C. § 242 for this claim. ECF No. 11 at 10. As the Court previously explained, "[t]his statute provides for criminal prosecution of civil rights violations and is enforced by the United States Department of Justice, not by private individuals." ECF No. 5 at 15 (citations omitted). Private individuals may, however, bring civil rights conspiracy claims under 42 U.S.C. § 1985(3).

To plead a violation of § 1985(3), a plaintiff must allege "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation

---

[9]If Martin cannot ultimately demonstrate that the MPD and SFPD Officer Defendants violated his constitutional rights, then any *Monell* claim will also fail. *Carr v. City of North Chicago*, 908 F. Supp. 2d 926, 930 (N.D. Ill. 2012) ("A predicate to recovery under *Monell* is, of course, a constitutional injury." (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986))).

of a right or privilege granted to U.S. citizens." *Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir. 2000) (quoting *Majeske v. Fraternal Order of Police, Loc. Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996)). A civil rights conspiracy claim must include an allegation of "some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002) (citing *Majeske*, 94 F.3d at 311). The statute's coverage also extends to "conspiracies to discriminate against persons based on sex, religion, ethnicity or political loyalty." *Volk v. Coler*, 845 F.2d 1422, 1434 (7th Cir. 1988) (collecting cases).

Martin has pleaded that his arrest was based on his race. However, his amended complaint fails to make clear how the MPD and SFPD Officer Defendants were interacting or communicating with each other about the events of July 12 and 13, 2024, so the allegations do not permit an inference that a conspiracy to deprive Martin of his civil rights existed among these Defendants. *See Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002) ("To establish the existence of a conspiracy, a plaintiff must show that the conspirators *agreed* to inflict injury upon him . . . ." (emphasis added) (citing *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 263 (7th Cir. 1999))). Because he has failed to plead the existence of a conspiracy, this claim fails.

To the extent Martin is attempting to raise this claim against the Municipal Defendants, there are no allegations in the amended complaint that would support such a claim. "Actions under § 1985 are not available [against municipal entities] on the basis of *respondeat superior*"—merely having employed a wrongdoer—"in the absence of allegations that an official custom, policy or practice has caused the deprivation." *Hernandez v. Partners Warehouse Supplier Servs., LLC*, 890 F. Supp. 2d 951, 959 (N.D. Ill. 2012) (citing *Collier v. Rodriguez*, No. 96–23, 1996 WL 535326, at *3 (N.D. Ill.

Sept. 18, 1996)). Although Martin has alleged enough to nudge his *Monell* claim past screening, *see supra* Section 4.6, he has failed to allege an underlying civil rights conspiracy claim. Therefore, he cannot sustain this claim against the Municipal Defendants.

Martin has already been given an opportunity and instructions on how to properly plead this claim, ECF No. 5 at 16–17, and has failed to properly do so, so the Court will dismiss his conspiracy claim with prejudice.

### 4.8    State Law Claims

#### 4.8.1    Deceit and Witness Tampering

Martin again attempts to raise a state law claim of deceit and witness tampering, ECF No. 11 at 10–11, despite the Court's previous dismissal with prejudice of such a claim, ECF No. 5 at 18. There is no reason for the Court to revisit its prior finding that such a claim is not available under state law, so it will stand dismissed with prejudice.

#### 4.8.2    State Law Defamation

"The elements of a common law action for defamation are: (1) a false statement; (2) communicated by speech, conduct or in writing to a person other than the one defamed; and (3) the communication is unprivileged and tends to harm one's reputation, lowering him or her in the estimation of the community or deterring third persons from associating or dealing with him or her." *Laughland v. Beckett*, 870 N.W.2d 466, ¶ 22 (Wis. Ct. App. 2015) (quoting *Ladd v. Uecker*, 780 N.W.2d 216, ¶ 8 (Wis. Ct. App. 2010)).

As an initial matter, because Martin is proceeding on several federal constitutional claims and those claims are interrelated with his defamation claim, the Court will exercise supplemental jurisdiction over this state law claim. 28 U.S.C. § 1367(a).

Martin argues that the public dissemination of his mugshot after his allegedly unlawful arrest and detention was defamatory. The amended complaint indicates that Martin was in fact booked into jail, so it is not clear how his mugshot (i.e., his booking photo)—which merely reflected the fact of his detention—was a false statement. It is also not clear whether or how each of the Defendants was involved in publicly disseminating his mugshot. Martin was given notice of each of these elements, ECF No. 5 at 18, but failed to plead them adequately. Accordingly, the Court will dismiss this claim with prejudice.

## 5. CONCLUSION

For all the reasons stated above, Martin will be permitted to proceed on the following claims:

- A Fourth Amendment unlawful arrest claim against the MPD and SFPD Officer Defendants;

- A First Amendment retaliatory arrest claim against the MPD and SFPD Officer Defendants;

- A Fourteenth Amendment discriminatory arrest claim against the MPD and SFPD Officer Defendants;

- A Fourth Amendment excessive force claim against the MPD and SFPD Officer Defendants;

- A Fourth Amendment claim for wrongful detention based on fabricated evidence against the MPD and SFPD Officer Defendants; and

- A claim for municipal liability under *Monell* against the Municipal Defendants.

His civil rights conspiracy claim and his state law defamation claim will be dismissed with prejudice for failure to state a claim. His state law claim for deceit and witness tampering stands dismissed with prejudice.

The next step in this case is service of the amended complaint on the known Defendants: MPD Officer Defendants Xiong and Alba, SFPD Officer Defendant Beres, and the Municipal Defendants. Federal Rule of Civil Procedure 4(c)(3) provides that the Court must order service of the operative complaint by the U.S. Marshals Service if a plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915 and if the plaintiff so requests. *See Williams v. Werlinger*, 795 F.3d 759, 759 (7th Cir. 2015). Congress requires the U.S. Marshals Service to charge a fee for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for service by mail is $8.00 per item mailed; for process served personally by the U.S. Marshals Service, the fee is $65 per hour. 28 C.F.R. § 0.114(a)(2), (a)(3). Congress has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service.

Martin has already been authorized to proceed in forma pauperis. ECF No. 5 at 21. Thus, the Court will require Martin to file a notice on or before **September 5, 2025** indicating whether he desires service by the U.S. Marshals Service or will obtain service on his own. If Martin wants to effect service himself, he should simultaneously file a request for the Clerk of the Court to issue a service packet to him.

Accordingly,

**IT IS ORDERED** Plaintiff Ronnie Martin's 42 U.S.C. § 1985(3) civil rights conspiracy claim and state law defamation claim be and the same are hereby **DISMISSED with prejudice**; and

**IT IS FURTHER ORDERED** that, on or before **September 5, 2025**, Plaintiff Ronnie Martin file a notice indicating whether he desires service by the U.S. Marshals Service or will obtain service on his own.

Dated at Milwaukee, Wisconsin, this 22nd day of August, 2025.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

---

Plaintiff will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.